IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

ROBIN L. WILLIAMS,                 )
                                   )
              Petitioner,          )
                                   )
      v.                           )        CV 110-153
                                   )        (Formerly CR 104-051)
UNITED STATES OF AMERICA,          )
                                   )
              Respondent.          )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Before the Court is Petitioner Robin L. Williams' motion to vacate, set aside, or correct

his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Court

**REPORTS** and **RECOMMENDS** that the motion be **DENIED**, that this civil action be

**CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Criminal Proceedings

In May 26, 2004, a federal grand jury returned a 30-count indictment against Petitioner

and five co-defendants: Charles Michael Brockman, John Duncan Fordham, Matthew Chad

Long, Rick Lamar Camp, and Fordham, Inc., d/b/a Duncan Drugs.[1] United States v. Williams,

---

[1] Petitioner was named in Counts 1, 2, 4, 5, 6, 7, 8, 9, 10, and 19 through 28 of the original indictment. See CR 104-051, doc. no. 1. As the result of the dismissal of several counts of the original indictment on the government's motion, a redacted indictment retaining the same Count numbers of the original indictment was issued on May 5, 2005; the redacted indictment dropped Counts 6, 20, 23, and 26 against Petitioner. See id., docket entry for doc. no. 202. As the remaining allegations in the redacted indictment were the same as those in the original indictment, the Court will continue to refer to the original indictment for ease of reference.

CR 104-051, doc. no. 1 (S.D. Ga. May. 26, 2004) (hereinafter "CR 104-051"). Count 1 of the indictment charged each defendant with involvement in a conspiracy in violation of 18 U.S.C. § 371, the principle objects of which were: (1) to defraud the Community Mental Health Center of East Central Georgia ("CMHC"), a healthcare benefit program receiving federal funds, of money and property and of the intangible right to honest services, and to obtain money and property from a healthcare benefit program by means of false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. §§ 1346-47; and (2) to embezzle, steal, obtain by fraud, and intentionally misapply property of the CMHC, a program receiving federal funds, in violation of 18 U.S.C. § 666. Id. at 1-14.

The remaining Counts brought against Petitioner charged him with the commission of the substantive offenses of the conspiracy: (1) four counts of healthcare fraud, in violation of 18 U.S.C. § 1347 (Counts 2, 8, 9, and 10);[2] (2) one count of misapplication and theft from an organization receiving federal funds, in violation of 18 U.S.C. § 666 (Count 4); (3) two counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 5 and 7); and (4) seven counts of giving bribes to an agent of an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(2) (Counts 19, 21, 22, 24, 25, 27, and 28). Id. at 15-28.

According to the indictment, the conspiracy began on or about December 1999 and continued until on or about March 2003. Id. at 5. Petitioner, as a member of the Georgia House of Representatives, recommended that the CMHC hire Brockman as its business

---

[2]The healthcare fraud Counts charged that Petitioner and others acted knowingly to defraud the CMHC "of money and property and of the intangible right of honest services, and to obtain, by means of false or fraudulent pretenses, representations, and promises, money and property owned by, and under the control of, the [CMHC], in connection with the delivery of and payment for health care benefits and services." CR 104-051, doc. no. 1, p. 15.

2

manager and stated that funds would be allocated for the position. Id. at 3. The indictment goes on to allege that once Brockman was in place at the CMHC, Petitioner would arrange for Brockman to encourage the CMHC to enter into contracts with third parties associated with Petitioner, including Defendants Long, Camp, Fordham, and Duncan Drugs. Id. at 6. To obtain and keep these contracts, these third parties were informed that they must pay Petitioner portions of the compensation for the contract. Id. These payments were allegedly made so as to disguise and conceal both their nature and Petitioner's improper interest in the contracts, as well as his influence with Brockman. Id. The indictment further alleged that Petitioner would provide things of value to Brockman in exchange for Brockman's official actions taken in furtherance of the conspiracy as an officer of the CMHC. Id.

After an eight-day jury trial, Petitioner was convicted on May 5, 2005, on all counts in the redacted indictment. Id., doc. no. 204. On September 15, 2005, the Honorable Dudley H. Bowen, Jr., United States District Judge, sentenced Petitioner to a 120-month term of imprisonment. Id., doc. no. 325-1, p. 151. Petitioner raised the following claims on direct appeal: "1) his conviction was not supported by the sufficiency of the evidence; 2) the trial court improperly admitted evidence not contained in the Indictment; and 3) the trial court erred in sentencing him." (Doc. no. 1-1, p. 2); see United States v. Williams, No. 05-15499, (11th Cir. Mar. 12, 2007) *available at* CR 104-051, doc. no. 342. Petitioner did not raise claims relating to the legal viability of the honest-services charges before the District Court or on direct appeal. Petitioner's conviction was affirmed by the Eleventh Circuit. Williams, No. 05-15499. Petitioner did not file a petition for a writ of certiorari.

**B.      Issues Raised in § 2255 Motion**

On November 22, 2010, Petitioner filed the instant § 2255 motion (doc. no. 1), in

3

which he challenges his convictions and the underlying indictment in light of the Supreme Court's recent decision in Skilling v. United States, 561 U.S. ___, 130 S.Ct. 2896 (2010). In Skilling, the Supreme Court interpreted the honest-services fraud statute, 18 U.S.C. § 1346 ("Section 1346"), and confined the honest-services fraud theory of liability solely to bribery and kickback schemes. 130 S.Ct. at 2905. The Supreme Court specifically rejected the government's argument in Skilling that Section 1346 criminalizes undisclosed self-dealing. Id. at 2932.

Petitioner argues in Ground One that because the government alleged in the indictment, produced evidence at trial, and instructed the jury that Petitioner had committed honest-services fraud by engaging in bribery and kickbacks as well as undisclosed self-dealing, that his convictions on those counts are therefore constitutionally infirm and should be vacated. (Doc. no. 1-1, pp. 10-23.) In Ground Two, Petitioner argues that his convictions for the money laundering counts are predicated on the conduct alleged in Counts 1 and 2; accordingly, he argues, if those convictions are vacated, then his money laundering convictions should likewise be vacated. (Id. at 25-26.) In Ground Three, Petitioner argues that the theft and bribery charges were completely incorporated into the allegations of the conspiracy charge in Count 1, and thus the legally flawed honest-services theory flows to these other convictions. (Id. at 26.) Stated another way, Petitioner argues that because (1) the government "put forth illegal honest-services fraud allegations before the jury" on the conspiracy charge, and (2) the theft and bribery charges were included as conduct of the conspiracy, that (3) Petitioner's convictions on the theft and bribery charges were therefore "tainted by the legally flawed honest-services fraud allegations in the conspiracy charge," and should accordingly be vacated. (Id. at 26-27, 31-32.) Finally, in Ground Four, Petitioner argues that the grand jury that

4

indicted him was equally exposed to the improper honest-services fraud theory, and thus, the indictment should be dismissed as well. (Id. at 32.)

Respondent contends in its response that all of Petitioner's claims are procedurally defaulted and lack merit; Respondent further asserts that Petitioner's challenge to his convictions on the theft and bribery counts is untimely. (See generally doc. no. 8.) Petitioner has filed a reply in which he argues that he has not procedurally defaulted his claims and that he should prevail on the merits. (See generally doc. no. 10.) The Court resolves the matter as follows.

## II.     DISCUSSION

### A.     Application of Skilling to Petitioner's Claims

As an initial matter, the Court recognizes that there are two sets of claims raised in Petitioner's § 2255 motion. With respect to the first set – those claims that challenge Petitioner's convictions for honest-services fraud under 18 U.S.C. § 1346 (i.e., those claims raised in Ground One of Petitioner's motion that challenge his convictions for conspiracy and healthcare fraud) – the parties agree (1) that the holding in Skilling applies to these claims and (2) that Skilling extends the statute of limitations relating to these claims until June 24, 2011, a year after Skilling was decided.[3]  (Doc. no. 8, p. 4; doc. no. 10, p. 1.)  The parties disagree, however, whether Skilling has any impact on Petitioner's second set of claims, which challenge his convictions on Counts that did not allege honest-services fraud (i.e., those claims

_____

[3]Respondent also concedes that Petitioner's money laundering convictions – raised in Ground Two of Petitioner's motion – "are rooted in part" on Petitioner's conviction for healthcare fraud on Count 2. (Doc. no. 8, p. 15 n.10.)  Respondent argues, however, that "if the Court finds no Skilling error with regard to Count 2, [Petitioner's] money laundering convictions are also unaffected." (Id.)

5

challenging Petitioner's convictions for theft and bribery) ("non-1346 claims"). (Doc. no. 8, pp. 4-5; doc. no. 10, p. 2.) Respondent further argues that because <u>Skilling</u> has no impact on this second set of claims, Petitioner is time-barred from collaterally attacking them in his § 2255 motion. (Doc. no. 8, pp. 4-5.)

Because the Court concludes, *infra*, that Petitioner has procedurally defaulted his <u>Skilling</u> claims, even if <u>Skilling</u> did affect all of his convictions, he would not be entitled to the relief he seeks. Accordingly, the Court need not resolve the discrepancy as to whether <u>Skilling</u> applies to Petitioner's non-1346 claims and proceeds with its analysis by assuming, without deciding, that <u>Skilling</u> applies to all of Petitioner's convictions. Likewise, as the Court has determined that <u>Skilling</u> affords Petitioner no relief, it need not decide whether, as Respondent contends, the non-1346 claims are time-barred.

**B.    Procedural Default**

The Court now turns its attention to the procedural default issue. Respondent argues that because Petitioner failed to raise an honest-services challenge at the trial court level or on direct appeal, Petitioner's claims are procedurally defaulted unless he can show either (1) cause excusing his default and actual prejudice from the error, or (2) that the Court's failure to consider his claims will result in a miscarriage of justice because he is "actually innocent." (Doc. no. 8, p. 5.) Respondent argues that Petitioner can meet neither of these standards. (<u>Id.</u>) Petitioner counters that Respondent's procedural default argument is a "red herring" because a <u>Skilling</u>-type challenge was not available to him on direct appeal, and thus his claims are not procedurally defaulted. (Doc. no. 10, pp. 3-4.)

As Respondent correctly notes, a prisoner seeking collateral relief "must clear a significantly higher hurdle than would exist on direct appeal." <u>United States v. Frady</u>, 456

6

U.S. 152, 166 (1982). Generally, where a petitioner seeks collateral relief based on trial errors to which no contemporaneous objection was made at trial, id. at 167-68, or on direct appeal, "it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (per curiam) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

To overcome a procedural bar or default, the § 2255 movant must "demonstrate a cause for this default and show actual prejudice suffered as a result of the alleged error." Montano, 398 F.3d at 1280.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'

Id. (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

In examining a petitioner's procedural default, courts must not apply "an overly rigid per se approach." Holland v. Florida, 560 U.S. ___, 130 S.Ct. 2549, 2565 (2010). That being said, courts must exercise restraint before expanding the exceptions to the procedural default rule. McKay v. United States, 657 F.3d 1190, 1198 (11th Cir. 2011) (citing Dretke v. Haley, 541 U.S. 386, 394 (2004) ("[I]t is precisely because the various exceptions to the procedural default doctrine are judge-made rules that courts as their stewards must exercise restraint, adding to or expanding them only when necessary.")). Societal interests in the

7

finality of criminal judgments further counsel against a permissive scope of collateral review. See, e.g., Gilbert v. United States, 640 F.3d 1293, 1309-12 (11th Cir. 2011) (*en banc*) (explaining that the "critically important nature" of finality interests weigh against permissive interpretations of procedural rules in the habeas corpus context), *petition for cert. filed*, No. 11-6053 (Aug. 26, 2011). It is with these principles in mind that the Court turns to Petitioner's motion.

Petitioner argues that procedural default should not apply here because the ground of error raised in the instant motion – that Petitioner's convictions were premised on an improper theory of honest-services fraud – was not "available" to him on direct appeal. (Doc. no. 10, p. 3.) Petitioner contends that this ground was not available because, had he challenged the application of Section 1346 to his convictions on direct appeal, the merits of such a claim "would have required the appellate court to do far more than merely further develop facts" because it would have needed "to wade through the hodge-podge of conflicting holdings from pre-Skilling honest-services fraud cases in this circuit." (Id.) However, Mills instructs that a ground of error is "available" on direct appeal when its merits can be reviewed without any further factual development, 36 F.3d at 1055; yet what Petitioner describes is legal analysis, not factual development. Nowhere does Petitioner argue that the facts necessary to present the instant claims were not sufficiently developed at trial. Having failed to show that further factual development is required, Petitioner's grounds of error were thus "available" under Mills. Id.

Petitioner further argues that Respondent is taking inconsistent positions before this Court and another district court in this Circuit. (Doc. no. 10, p. 4 (citing Stayton v. United States,766 F. Supp.2d 1260, 1266 (M.D. Ala. 2011).) Stayton, which addressed a similar

8

Skilling-type challenge in a habeas corpus motion and which is discussed in detail below, explained, "The Government concedes, as it must, that procedural default does not apply 'if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation.'" 766 F. Supp.2d at 1266 (quoting Reed v. Farley, 512 U.S. 339, 354 (1994)). The Court sees nothing inconsistent in Respondent's positions in Stayton and before this Court. Indeed, it is only "*if the petitioner establishes cause* for the waiver *and shows actual prejudice* resulting from the alleged violation" that the procedural bar is lifted. Farley, 512 U.S. at 354 (emphasis added). Respondent acknowledges that this standard applies in this case, just as it did in Stayton. (Doc. no. 8, p. 5.) Accordingly, the Court proceeds to review Petitioner's motion under the "cause and prejudice" and "actual innocence" standards. As explained below, Petitioner can satisfy neither standard.

### 1. Cause and Prejudice

#### a. Petitioner Has Not Established Cause

Petitioner argues that cause excusing his default is established in this case because the Supreme Court issued its holding in Skilling after the time for Petitioner's direct appeal expired; thus, he argues, he had no basis for raising such a novel Skilling-type challenge to Section 1346. (Doc. no. 10, pp. 4-8.) The Court disagrees.

To establish cause premised on a recent legal development, Petitioner must demonstrate that his claim is "so novel that its legal basis is not reasonably available to counsel." Bousley v. United States, 523 U.S. 614, 622 (1998). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." Smith v. Murray, 477 U.S. 527, 537 (1986).

Here, Petitioner has not demonstrated cause based on the ruling in Skilling. Despite

his argument to the contrary, the vagueness challenge to Section 1346 at issue in Skilling was not a novel claim at the time of Petitioner's direct appeal. In fact, prior to Skilling and Petitioner's direct appeal, the scope of honest-services fraud under Section 1346 had been challenged numerous times in circuit courts across the nation, albeit without much success. See, e.g., United States v. Rybicki, 354 F.3d 124, 142-43 (2d Cir. 2003) (en banc); United States v. Welch, 327 F.3d 1081, 1109 n.29 (10th Cir. 2003); United States v. Hasner, 340 F.3d 1261, 1268-69 (11th Cir. 2003); United States v. Easton, 54 F. App'x 242, 244 (8th Cir. 2002) (per curiam); United States v. Frost, 125 F.3d 346, 371 (6th Cir. 1997); United States v. Waymer, 55 F.3d 564, 568-69 (11th Cir. 1995). Moreover, Skilling was not heard in isolation; the Supreme Court granted certiorari for two cases that also raised challenges to the scope of Section 1346. Skilling, 130 S.Ct. at 2912 n.9; Black v. United States, No. 08-876, 129 S.Ct. 2379 (2009); Weyhrauch v. United States, No. 08-1196, 129 S.Ct. 2863 (2009). In short, there were numerous vagueness challenges to Section 1346 prior to Petitioner's direct appeal. Thus, Petitioner's contention that a Skilling-type argument was so novel that it was unavailable to him must fail.

Petitioner argues, however, that because the Eleventh Circuit and other appellate courts had rejected previous vagueness challenges to Section 1346, it would have been futile for him to have done the same on direct appeal. (Doc. no. 10, pp. 5-6.) Yet that an argument appeared likely to fail is insufficient cause to excuse procedural default. Bousley, 523 U.S. at 623 ("futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'") (quoting Engle v. Isaac, 456 U.S. 107, 130 n.35 (1982)). The majority of courts to consider the issue of futility have similarly held that Bousley bars a Skilling-based claim that was not raised on direct appeal. Ryan v. United

States, 645 F.3d 913, 916 (7th Cir. 2011) (Easterbrook, J.) *petition for cert. filed*, No. 11-499 (Oct. 19, 2011); United States v. Lynch, --- F. Supp.2d ----, Nos. 07-431-01, 07-431-02, 2011 WL 3862842, at *3 (E.D. Pa. Aug. 31, 2011); United States v. Jennings, Nos. CR-04-402, CV-11-150 (RHK), 2011 WL 3609298, at *3 (D. Minn. Aug. 15, 2011) *appeal docketed*, No. 11-3127 (8th Cir. Sept. 30, 2011); United States v. Scruggs, No. 3:07CR192-B-A, 2011 WL 1832769, at *3 (N.D. Miss. May 13, 2011), *reconsideration denied*, 2011 WL 2566140, at *1 (N.D. Miss. June 28, 2011), *appeal docketed*, No. 11-60564 (5th Cir. Aug. 23, 2011); Walker v. Rivera, --- F. Supp.2d ----, No. 3:10-2464-RMG, 2011 WL 4480170, at *2 (D.S.C. Sept. 26, 2011), *appeal docketed*, No. 11-7425 (4th Cir. Oct. 27, 2011); but see Stayton, 766 F. Supp.2d at 1266-67; United States v. McDonnell, Nos. SACV 10-1123, SACR 04-0309, 2011 WL 2463194, at *3-5 (C.D. Cal. June 20, 2011).

The Seventh Circuit, the highest court to have considered the issue, held that former Illinois governor George H. Ryan, who had been convicted of honest-services mail fraud and violations of the Racketeer Influenced and Corrupt Organizations Act, failed to show cause to excuse his procedural default because futility is insufficient to establish cause. Ryan, 645 F.3d at 916-17 (citing Bousley, 523 U.S. at 622-23). Morover, the Seventh Circuit concluded, it would not have been futile for Ryan to make a Skilling-type challenge to Section 1346. To borrow from Ryan, "If [Williams'] lawyers had done what Skilling's lawyers did, the controlling decision today might be [Williams] rather than Skilling." Id. Nothing prevented Petitioner from asserting a similar vagueness challenge to the statute on direct appeal, and his failure to do so bars his claims.

Petitioner urges the Court to adopt the minority approach in interpreting Bousley. (Doc. no. 10, pp. 6-8.) Quoting Stayton, Petitioner argues for extending the exceptions to the

procedural default rule to permit an otherwise defaulted claim where: (1) that claim has met with "near-unanimous" rejection in lower courts and (2) a later decision issued by the Supreme Court marks a "clear break with the past" and overturns such widespread practice. (Id. (quoting 766 F. Supp.2d at 1266-67).) In Stayton, the district court for the Middle District of Alabama found that the Supreme Court's holding in Skilling was such a "clear break with the past" that it excuses the procedural default of petitioners whose appeals predate Skilling. The district court held that "when the state of the law at the time [of appeal] did not offer a reasonable basis upon which to challenge the jury instructions, that constitutes cause for failing to raise the issue at that time." 766 F. Supp.2d at 1266 (quoting Reed v. Ross, 468 U.S. 1, 16-17 (1984)) (internal quotations omitted).

The district court in Stayton followed dicta in Reed which stated that there might be no reasonable basis for challenging jury instructions where a Supreme Court decision overturns "a longstanding and widespread practice to which the Supreme Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." Id. (quoting Reed, 468 U.S. at 17). Finding that Skilling presented such a situation, the district court concluded that this gave petitioners in that case cause excusing their default. Id. at 1269.

To reconcile its application of Reed with Bousley's instruction that futility is insufficient to demonstrate cause, the district court explained that Bousley applies where a claim had been rejected by a particular circuit, but had not been met with "near-unanimous" rejection by lower courts across the nation. See id. at 1267 n.7. The district court speculated that an overly rigid application of the procedural default rule would spur defendants to raise any conceivable claim on direct appeal to account for the possibility that the claim might one day provide relief on collateral attack following a future Supreme Court decision. Id.; see also

12

McDonnell, 2011 WL 2463194, at \*3-5 (finding cause to excuse procedural default under similar reasoning).

The Court declines to follow the reasoning set forth in Stayton. While mindful that an overly rigid application of procedural default rules is improper, Holland, 130 S.Ct. at 2563, it is equally important for the Court to show restraint before carving out further exceptions to the procedural default rule. Dretke, 541 U.S. at 394. Here, the Court will not create further exceptions to the procedural default rule where the language in Bousley is clear: futility is insufficient to establish cause. 523 U.S. at 623. Moreover, the Court finds that the concern expressed in Stayton for spurring unmeritorious claims is overstated: Skilling does not present the situation where a new Supreme Court decision has suddenly overturned an unchallenged rule of law. As noted above, Section 1346 had been actively challenged on vagueness grounds during the period leading up to Petitioner's direct appeal and the Supreme Court's decision in Skilling. In other words, concern for judicial economy is premature where litigants and courts continue to grapple with the law at issue.

Furthermore, Eleventh Circuit law counsels in favor of upholding procedural rules in habeas corpus cases despite arguments that claims were novel or futile. See Sawyer v. Holder, 326 F.3d 1363, 1366-67 (11th Cir. 2003) ("Sawyer argues that he can show cause [excusing procedural default] because at the time of his direct appeal and first habeas petition, circuit precedent foreclosed his claim under Richardson. However, the Supreme Court rejected such an argument in Bousley."); see also United States v. Coley, 336 F. App'x 933, 936 (11th Cir. 2009) (*per curiam*) (finding claim alleging sentencing error was procedurally defaulted irrespective of the fact that it relied on Supreme Court cases not yet decided at the time of appeal); Howard v. United States, 374 F.3d 1068, 1072-73 (11th Cir. 2004) (novelty of claim

13

does not excuse procedural default where type of claim at issue had been brought previously and petitioner could have easily brought it as well). Consistent with the majority approach and the Eleventh Circuit's application of Bousley, the Court concludes that Petitioner's futility argument is insufficient to show cause excusing his default.

**b.     Petitioner Has Not Established Actual Prejudice**

Petitioner has not shown cause to excuse his procedural default, yet even if he did, Petitioner must also show prejudice. Here, Petitioner does not explicitly argue that he suffered actual prejudice. While he clearly contests his convictions (doc. no. 1-1, p. 22), conviction alone can hardly be sufficient to satisfy prejudice. Indeed, courts would be hard-pressed to find a petitioner who was not so prejudiced. However, to the extent that Petitioner challenges the indictment and jury instructions in the merits of his brief, he has arguably raised the issue of prejudice. (See generally id.) Nevertheless, as discussed below, Petitioner has failed to demonstrated actual prejudice.

To demonstrate actual prejudice, a prisoner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170 (emphasis in original). Thus, petitioner must demonstrate that the reference to the allegedly invalid honest-services theory "in the indictment, the jury instructions, or during trial 'worked to his actual and substantial disadvantage.'" Lomelo v. United States, 891 F.2d 1512, 1513 (11th Cir. 1990) (quoting Frady, 456 U.S. at 170).

The petitioner in Lomelo, who was convicted on several counts of mail fraud and extortion, argued on collateral attack that the Supreme Court's holding in McNally v. United

14

States, 483 U.S. 350 (1987), which removed the intangible right to good government from the scope of the mail fraud statute, rendered his conviction for mail fraud invalid and resulted in "prejudicial spillover" to his convictions for extortion, rendering those convictions invalid as well. Id. In assessing prejudice, the Court of Appeals held that the wording of the indictment on which the conviction was based was a "key consideration" and reasoned that a petitioner cannot show prejudice from an invalid theory in the indictment where the indictment alleges a valid theory in conjunctive fashion. Id. at 1517. In other words, if a valid and invalid theory are alleged using the conjunctive "and" such that a conviction must have required the jury to convict on a valid theory, then there is no prejudice. Furthermore, jury charges must be read as a whole, and should be read in the broader context of allegations in the indictment and at trial.[4] See id. at 1518-19. Applying these principles, the Court will address the conspiracy count (Count 1) and the healthcare fraud counts (Counts 2, 8, 9, and 10) in turn.

### i. Count 1 - Conspiracy

Count 1 of the indictment charged, in relevant part, that Petitioner acted knowingly and willfully to:

> execute a scheme and artifice to defraud health care benefit programs of money and property *and* of the intangible right to honest services, *and* to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of health care benefit programs, in connection with the delivery of and payment for health

---

[4]The Court acknowledges that Congress passed Section 1346 to override the Supreme Court decision in McNally by permitting fraud convictions to be predicated on deprivations of honest services. United States v. Walker, 490 F.3d 1282, 1297 n.16 (11th Cir. 2007) (citing Waymer, 55 F.3d at 568 n.3). Furthermore, while Lomelo reached a contrary conclusion under the cause prong of the cause and prejudice standard, Bousley has clarified the analysis under the cause prong, as noted above, *supra* Part II.B.1.a. 523 U.S. at 623; accord Sawyer, 326 F.3d at 1366-67. Despite these shifts in the law, Lomelo's analysis under the prejudice prong remains good law.

care benefits, items, and services.

CR 104-051, doc. no. 1, pp. 5-6 (emphasis added). The use of the word "and" in the indictment indicates that honest-services fraud was but a part of the overall scheme to defraud the CMHC of money and property. Because the indictment alleged, conjunctively, that Petitioner defrauded the CMHC of money and property as well as honest services, he cannot show prejudice based on the language of the indictment on Count 1. See Lomelo, 891 F.2d at 1517.

The jury instructions on Count 1 included the language used in the indictment as to the healthcare fraud prong of the conspiracy. See id., doc. no. 324-5, p. 14. The instructions also included three other prongs of the conspiracy in addition to the healthcare prong: the jury was instructed that it could convict Petitioner for conspiracy to commit theft from a program receiving federal funds, to receive bribes as an agent of a program receiving federal funds, and to pay bribes to an agent of a program receiving federal funds. Id. at 14-15. Although the conspiracy count alleged multiple objects, the jury was instructed that it could convict Petitioner of conspiracy if it found that he conspired to commit at least one of the overt acts described in the indictment. Id. at 16. Petitioner argues that despite his separate convictions for theft and bribery, this instruction permitted the jury to convict him on the conspiracy count solely on the healthcare fraud prong (i.e., not on the theft or two bribery prongs), solely for honest-services fraud (i.e., not for money or property fraud), and solely on the invalid theory of undisclosed self-dealing (i.e., not on the valid theories of bribery and kickbacks). (Doc. no. 1-1, p. 12.) The Court does not agree.

The jury separately convicted Petitioner of one count of theft and seven counts of bribery. CR 104-051, doc. no. 204. One of the numerous overt acts alleged in Count 1 of the

16

indictment charged that Petitioner engaged in bribery by "[giving] things of value to defendant BROCKMAN and to "JP," [another official at the CMHC not named as a defendant] for and because of the performance of their official actions and duties as officers of the CMHC." Id., doc. no. 1, p. 14, ¶ 40. Indeed, Petitioner acknowledges that Count 1 of the indictment alleged that he committed honest-services fraud under a valid bribery theory. (Doc. no. 1-1, p. 10.) The overt act of bribery alleged in the conspiracy count consists of the same conduct for which Petitioner was separately convicted on several counts of bribery. Compare CR 104-051, doc. no. 1, p. 14, ¶ 40 with id. at 27-28. Another of the overt acts alleged in the conspiracy count consisted of the same conduct for which Petitioner was separately convicted of theft from a federally funded program. Compare id. at 10, ¶ 15 with id. at 18. Because the jury could not have convicted Petitioner for conduct on the theft count and bribery counts without also finding that he engaged in the overt acts of the conspiracy that alleged the same conduct under valid theories of guilt, he therefore cannot show actual prejudice with regard to his conviction on Count 1. See Lomelo, 891 F.2d at 1519.

### ii.     Counts 2, 8, 9, and 10 - Healthcare Fraud

Similarly, Counts 2, 8, 9, and 10 of the indictment charged, in relevant part, that Petitioner acted knowingly and willfully to:

> devise and intend to devise a scheme and artifice to defraud [healthcare benefit programs] of money and property *and* of the intangible right of honest services, *and* to obtain, by means of false or fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of [a health care benefit program] in connection with the delivery of and payment for health care benefits, items and services.

CR 104-051, doc. no. 324-5, p. 15 (emphasis added). The indictment charges, in conjunctive fashion, that Petitioner engaged in money and property fraud as well as honest-services fraud.

17

Accordingly, he cannot show prejudice from the indictment itself. Lomelo, 891 F.2d at 1517.

The jury instructions on Counts 2, 8, 9, and 10 provided that Petitioner could be found guilty of healthcare fraud if he:

> knowingly executed or attempted to execute a scheme or plan (a) to defraud a health care benefit program[;] or (b) to deprive a health care benefit program of the intangible right of honest services; or (c) to obtain money, assets, or property of a healthcare benefit services program by means of false or fraudulent pretenses. . .

CR 104-051, doc. no. 324-5, p. 21.

Petitioner argues that the disjunctive structure of these instructions permitted the jury to convict him of healthcare fraud solely under an invalid theory of honest-services fraud. (Doc. no. 1-1, pp. 15-20.) Although the Court acknowledges that the jury instructions on these counts were structured in disjunctive, rather than conjunctive fashion, they must be read in the broader context of all the charges. See Lomelo, 891 F.2d at 1518. Those charges included theft from the CMHC as well as bribing Brockman, for which Petitioner was separately convicted. CR 104-051, doc. no. 204.

More specifically, Counts 2, 8, 9, and 10 each alleged the same conduct for which Petitioner was separately convicted for bribery. Id., doc. no. 1, pp. 16, 21, 23, 25, 27-28. Indeed, Petitioner acknowledges that Counts 8, 9, and 10 included allegations of bribery, although he argues that Count 2 included no allegations of bribery or kickbacks that would support a conviction for honest-services fraud. (Doc. no. 1-1, pp. 15-17.) But as Respondent points out (doc. no. 8, p. 15), the conduct alleged in Count 2 included a charge that Petitioner paid off a $55,000 line of credit loan that Brockman owed; the jury convicted Petitioner of bribery for this same conduct in Count 19. CR 104-051, doc. no. 204. Since the jury could not have convicted Petitioner for conduct on the bribery counts without also finding that he

18

engaged in the same conduct alleged in the healthcare fraud counts, he therefore cannot show actual prejudice. See Lomelo, 891 F.2d at 1519.

Moreover, at best, Petitioner can only speculate that a jury *could* have found him guilty on Counts 2, 8, 9, and 10 based solely on an invalid theory of honest-services fraud. (Doc. no. 1, pp. 15-17.) However, Petitioner must show that the alleged errors created more than a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage. Frady, 456 U.S. at 170. In sum, Petitioner has not "shouldered the burden" to make this showing, and he has therefore failed to demonstrate actual prejudice.

As noted above, Petitioner must show both cause *and* prejudice to avoid procedural default. Montano, 398 F.3d at 1280. Here, he has shown neither. Accordingly, his default is not excused under the cause and prejudice standard.

### 2. Actual Innocence

Although Petitioner has failed to demonstrate cause and prejudice, the Court must still examine whether he can establish actual, factual innocence to save him from default. The Court concludes that he cannot.

Petitioner contends that he was charged with committing honest-services fraud by engaging in bribes and kickbacks – conduct which Skilling left intact under Section 1346 – and by engaging in undisclosed self-dealing. (Doc. no. 1-1, p. 10.) Petitioner asserts that this "mixed bag" of legally valid and invalid claims makes it "equally likely that the jury convicted [him] . . . based solely upon the broad, invalid legal theory of honest-services fraud by acts of undisclosed self-dealing" versus the valid bribery/kickback theory. (Id. at 12.) Petitioner cites Yates v. United States, 354 U.S 298, 312 (1957), to support his argument that if the Court finds that it is equally likely that his conviction was based on the legally infirm theory as it was

19

on the valid theory, then his conviction must be set aside. (Doc. no. 1-1, p. 14.) Petitioner reiterates this argument in his reply brief. (See generally doc. no. 10.) Yet as Respondent correctly points out (doc. no. 8, p. 3), Petitioner is relying on legal standards enunciated in the context of a direct appeal; however, this is not the applicable standard to establish actual innocence in the context of a habeas corpus motion.

To establish actual innocence, a prisoner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)). The actual innocence exception "is exceedingly narrow in scope," Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001), and requires a petitioner to show "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. "In addition, 'to be credible, a claim of actual innocence must be based on reliable evidence not presented at trial.'" Johnson, 256 F.3d at 1171 (quoting Calderon v. Thompson, 523 U.S. 538, 559 (1998)). Thus, if Petitioner fails to produce new reliable evidence, then he cannot establish actual innocence if the evidence that *was* presented at trial would permit a properly instructed, reasonable jury to convict him of honest-services fraud. See id.; Ryan, 645 F.3d at 918 ("The right question . . . is whether, applying current legal standards to the trial record, Ryan is entitled to a judgment of acquittal. If yes, then the mail fraud convictions must be vacated; if no, then they stand.").

Here, Petitioner has offered no reliable evidence *not* provided at trial to suggest that he is actually innocent of honest-services fraud under a bribery/kickback theory. Calderon, 523 U.S. at 559. Thus, if a properly instructed jury *could* have convicted Petitioner of honest-services fraud using the legal standards set by Skilling, then his convictions stand. Ryan, 645

F.3d at 918. As explained below, the Court concludes that a jury, if instructed that Skilling limits the crime of honest-services fraud to cover only schemes of bribery and kickbacks, could have so convicted Petitioner.

As Petitioner acknowledges, with regard to the counts in the indictment that alleged honest-services fraud, he was charged under a bribery/kickback theory – a theory that remains valid after Skilling.[5] (Doc. no. 1-1, pp. 10, 16-17.) As explained above, *supra* Part II.B.1.b., all of the Counts that charged Petitioner with honest-services fraud included the same allegations of bribery for which Petitioner was separately convicted. CR 104-051, doc. nos. 1, 204. Importantly, Petitioner has not shown *any* facts to call his bribery convictions into question. To borrow again from Ryan, the inference that Petitioner was properly convicted for honest-services fraud under a valid bribery theory "verges on the inescapable." 645 F.3d at 919.

Moreover, Counts 2, 8, 9, and 10 and the healthcare fraud prong of Count 1 alleged more than simply Petitioner's intent to defraud the CMHC of Brockman's honest services; they also alleged that Petitioner engaged in healthcare fraud under 18 U.S.C. § 1347 by obtaining money and property of the CMHC "by means of false or fraudulent pretenses, representations, and promises." CR 104-051, doc. no. 1, p. 15. To establish actual innocence, Petitioner would need to establish not only that he was actually innocent of defrauding the CMHC of Brockman's honest services, but also that he was actually innocent of defrauding the CHMC of money and property. See Skilling, 130 S.Ct. at 2934 (stating that Skilling's conspiracy

_____

[5]Petitioner disputes that Count 2 included allegations of bribery. (Doc. no. 1-1, p. 15.) However, as explained above, Count 2 alleged the same conduct for which Petitioner was separately convicted for bribery on Count 19. (See *supra* Part II.B.1.b.)

conviction based on an invalid honest-services theory and separate, valid theories are subject to harmless error analysis on direct appeal). Petitioner has not even attempted to make this showing – nor could he. Because Petitioner's convictions survive <u>Skilling</u>, he cannot establish actual innocence.

In sum, the claims in Petitioner's § 2255 motion are procedurally defaulted, and Petitioner has not shown that the default should be excused. Therefore, the § 2255 motion should accordingly be **DENIED**.

### III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the instant § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED on this 22nd day of November, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

22